THE STATE vs. WILLIAM H. GREEN.

On the trial of a prisoner for the murder of a woman to whom he had been married and with whom he was living as his wife, the state was allowed to prove that he had a former wife still living, that he had married the deceased under a different name from that which he had before borne, that he had imposed upon her by false letters and papers, and that he married another woman five weeks after the death of the deceased. Held, on a motion for a new trial, that the evidence was admissible to repel the presumption of conjugal affection on the part of the prisoner.

Where the motion did not show that the judge restricted the application of the evidence to this object, it was held that it would be presumed that the judge did his duty, and that as the motion did not show for what object the evidence was offered, nor on what ground it was objected to, it would be considered as properly admitted if admissible for any purpose.

Much of the foregoing evidence was allowed to be drawn from the prisoner on cross-examination, he having offered himself as a witness in his own behalf, and the objection taken being only to the pertinency of the evidence. Held to be no error.

・INDICTMENT for the murder of Mary H. Green by poison ; tried to the jury in the Superior Court, on the plea of not guilty, before *Loomis* and *Granger*, Js.

On the trial the State offered evidence to prove, and did prove, that the accused, by the name of G. W. Long, was married to a woman by the name of Doolittle, before he married Mary H. Green, the deceased ; that said former wife was still living at the date of the trial, and that he had never been divorced from her, but had (after cohabiting with her for a few months) abandoned her, and soon thereafter was married to the deceased by the name of William H. Green.   To this evidence the counsel for the accused objected, but the court admitted the evidence.

After the prosecution had rested the accused offered himself as a witness.   Being almost a stranger in this part of the country, he was enquired of on the cross-examination by the attorney for the state as to his true name, and he admitted that he had passed under the name of G. W· Long, and that he had a wife living in the state of New York to whom by

the name of G. W. Long he was lawfully married before he married Mary H. Green, the deceased, and that he still had another wife living in or near Utica, in the state of New York, which last named wife he married within five weeks after the death of said Mary, and that he introduced himself to said Mary and her friends by means of ficticious letters and papers, purporting to have been signed by certain parties, when in fact, as he admitted on his cross-examination, he had made the letters and papers himself and they were in his own handwriting. To the admission of this evidence the defendant objected, but the court admitted the evidence.

The jury returned a verdict of guilty of murder in the first degree, and the defendant moved for a new trial.

*E. W. Seymour*, in support of the motion.

The general principles as to the admissibility of evidence of character are all stated in 3 Greenleaf's Evidence, sec. 25, where the evidence is restricted to the trait of character which is in issue. In this case the State was permitted to prove that Green was a bigamist, and a forger, and that he had lived in different parts of the country under different names.

It is claimed by the State that under the decision in 9 Conn., 47, *State* v. *Watkins*, the evidence in regard to Green's former marriage was properly received. But it is to be observed that there was no evidence of any such connection with other women, subsequent to the marriage with Mary H. Green, as would evince alienated affection. Green left his former wife, on the contrary, and his subsequent marriage with Mary H. Green created no barrier between him and the gratification of any unlawful intercourse with such former wife, who was residing in another state, or with any one else, as in the case of *State* v. *Watkins*. Nor did the fact of his marriage with a former wife indicate that his affections were alienated from Mary H. Green. On the contrary he had left the former to live with the latter.

In the case under consideration the judge did not instruct the jury that the foregoing testimony "was not admissible to

prove the *corpus delicti*, but only to repel the presumption of innocence arising from the marriage relation." It was the duty of the court to so instruct the jury, but they were left to apply the evidence as they chose. See remarks of Hosmer, C. J., in *State* v. *Watkins*, and Judge Daggett's dissenting opinion.

*Sedgwick*, State Attorney, and *Peet*, contra.

PARK, J. We think the action of the court below in allowing the prosecutor to prove the former marriage of Green, is fully sustained by the case of *The State* v. *Watkins*, 9 Conn., 47. Green was on trial for the willful murder of Mary H. Green, his putative wife. He had married her to all appearance, for the ceremony of marriage had been performed in respect to them by competent authority, and so far as the world knew, or the jury could know from the transaction itself, she was in fact his wife. Hence it appears that, unless the prosecutor had been permitted to prove the character of this pretended marriage by showing that the accused was then a married man, it would have been an established fact in the case that the deceased was the lawful wife of the accused.

Would this fact, undisputed, raise a presumption in the prisoner's favor that he was innocent of the crime ? The case referred to answers this question. In it Hosmer, Chief Justice, says, (page 52,) "It was a prominent fact in the case that the deceased was the wife of the prisoner. The presumption thence arising, that she was not killed by her husband, or that it was not of malice aforethought, was powerful. The relation of husband and wife clearly implies a strong partiality on the part of the husband towards his wife and the most ardent desire to support her and to make her happy. As a man will consult his own preservation and pursue his own interest, so, as a general truth, he will equally regard the protection and interest of his wife. The motive for the most part is both powerful and unintermitting, and that man must be truly unfortunate whose experience and feelings do not attest this unquestionable truth."

These remarks of the Chief Justice accord with the com-

mon experience of mankind, that in a great majority of cases a husband will cleave unto his wife, and will protect and defend her from all injuries so far as it is in his power to do so. It is true there are cases, and many of them, where the conduct of a man towards his wife does not accord with this general rule, but to the credit of human nature they are exceptions. If this is true, then it follows that if, in a given case, the relation of husband and wife exists, and the inquiry is how the man treated his wife, the presumption would be that he treated her in accordance with the general rule, and it would require evidence of a contrary character to rebut the presumption, and render it as probable that he treated her ill as that he treated her kindly. This would be true in cases where the question involved did not amount to crime committed upon her, and much stronger would be the presumption in cases like the present, where the question is, whether he has cruelly and deliberately murdered her. This presumption is in addition to, and to be distinguished from, the legal presumption of innocence that exists in every case in favor of a party charged with the commission of crime; and in cases where both presumptions exist, the public prosecutor must overcome the force of both, and establish the contrary fact, before the accused can be found guilty.

In cases of circumstantial evidence this presumption would be urged with great effect upon the jury in favor of the accused. They would be told that murder in its mildest form is unnatural and requires the strongest motive for its commission; but that when its perpetration involves the destruction of the domestic ties,—when a father is accused of the willful murder of his son or daughter, or a son of that of his father or mother, or where a brother is charged with having murdered his sister, or a husband his wife, the unnatural character of the offence is greatly increased by the relation of the accused to the deceased, and creates a much stronger presumption in his favor than the ordinary legal presumption of innocence. From these considerations it seems to be clear that public justice requires, in cases like the present, that the prosecutor should be allowed to show that the deceased

was not, in fact, what she purported to be, the wife of the accused, in order to rebut the presumption in the prisoner's favor that would otherwise exist. In the case referred to the deceased was the wife of the accused, and in order to repel the presumption arising from the marital relation the court allowed the prosecutor to prove repeated acts of adulterous intercourse between the accused and a third person, in order to show that the accused had no affection for his wife and was hardened against the calls of connubial duty. If such evidence was admissible in that case, very clearly the evidence offered was admissible in this.

The accused further claims that there was error in the proceedings, because the court did not instruct the jury that the evidence of a former marriage was admissible only for the purpose which we have considered. But the motion discloses no such fact, and are we to presume that the court did not do its duty ? The presumption is that the court did its duty until the contrary appears.

It is further claimed that the fact of the former marriage of the accused did not indicate that his affections were alienated from the deceased, but that on the contrary it is evidence that he was strongly attached to her. All this may be, and if true the prisoner had the benefit of it. If he could prove that he loved and cherished her at all times up to the time of her death, it was strong evidence in his favor. All that the prosecutor attempted to prove was, that she was not in fact his wife, in order to repel the presumption of love and affection arising from that relation.

The remaining question to be considered is in respect to the cross-examination of the accused, who was a witness in his own behalf on the trial.

The motion does not disclose what the accused had testified to in chief, nor what the particular objection was to the enquiries put by the prosecutor, nor on what ground they were claimed to be pertinent, nor for what purpose they were allowed by the court. Hence, if they were relevant for any purpose we are to presume that they were offered and received for that purpose.

The rule that governs the cross-examination of witnesses is, that the enquiries must be confined to matters pertinent to what has been testified to in chief, and if the party cross-examining wishes to inquire concerning other matters relevant to the issue, he must call the witness at another proper time for the purpose. But in practice such inquiries are often made on cross-examination without objection, and allowed by the court, as a matter of convenience in the progress of a trial. No objection was made on this ground to the inquiries under consideration. It is unnecessary to observe that these inquiries were not made, nor allowed, for the purpose of showing that the accused was a bigamist, or that he had imposed upon the deceased and her friends by false and ficticious letters and papers manufactured by himself, in order to prejudice the jury against him. It is needless to say that they were not proper for any such purpose, and if the motion had contained a full statement of all that occurred on the trial, it would doubtless have disclosed the fact that the court so instructed the jury in the progress of the case.

We have already seen that the fact that the accused had a wife living at the time of his pretended marriage with the deceased, was proper to be received for the purpose which we have considered.

In relation to the marriage of the accused five weeks after the death of the deceased, we think the evidence was proper for the purpose of showing to some extent the feelings of the accused towards the deceased. We have seen that in cases of felonious homicide, and especially those depending upon circumstantial evidence, the feelings of the accused towards the deceased are often exceedingly important to be considered. Hence in cases of this kind an effort is always made by the public prosecutor to show that the accused harbored feelings of hostility to the deceased, in order to show a motive for the commission of the crime ; while on the other hand the accused, knowing the importance of the evidence, strenuously endeavors to make it appear that he entertained the kindest feelings towards the deceased. If such evidence would be

important to the prisoner, and especially where there would be a strong presumption in his favor from his relation to the deceased, no one can doubt that it would be proper for the prosecutor to show that no such friendliness or affection existed. This was attempted to be done by proving from the accused himself, on his cross-examination, that he married again in five weeks after the death of the deceased. Suppose instead of five weeks it had been done the next day, could there be any room for doubt that the fact was inconsistent with the existence of love on his part to the deceased ? We think not.

In relation to the false and fictitious letters and papers, we think they too show to some extent the true state of the prisoner's mind toward the deceased. His feelings towards her at the time of her death were the subject of inquiry and that could only be shown by his acts and declarations concerning her. Those nearest to the time in question were the most important to be considered, but those more remote might throw some light upon the subject. These letters and papers form a part of his conduct towards her from his first acquaintance with her. How long that was before her death, the motion does not inform us. For aught that appears we think this conduct was proper to be considered, and weighed by the jury in connection with the other evidence in the case, in order to ascertain the true state of the prisoner's mind toward the deceased at the time of her death.

A new trial is not advised.

In this opinion the other judges concurred.