## COURT OF APPEALS.

### April, 1908.

# THE PEOPLE v. GUSTAV DINSER.

(192 N. Y. 80.)

(1). MURDER IN THE SECOND DEGREE—EVIDENCE AS TO INTENT.

The evidence upon the trial of a defendant, convicted of the crime of murder in the second degree, examined and *held*, sufficient to justify the submission of the question of intent to the jury as an issue of fact for their determination.

(2). MOTIVE—PRESENCE OR ABSENCE IMPORTANT AS BEARING UPON INTENT—ERRONEOUS REFUSAL TO CHARGE THAT MOTIVE MAY BE CONSIDERED BY JURY UPON QUESTION OF INTENT.

While motive is not an essential ingredient of the crimes of murder in the first and second degrees, its presence or absence may present considerations of the utmost importance as bearing upon the question of intent, without proof of which neither of these crimes can be established. Where, therefore, the evidence upon a trial for murder raised an issue of fact upon the question of intent, and the defendant's counsel asked the trial court to charge "that it is proper for the jury to consider, in connection with the guilt or innocence of the defendant in this case, what motive he may have had, if any, to kill the deceased," a refusal to charge upon that subject except as previously charged, constitutes reversible error, where upon reference to the prior portions of the charge upon the subject of motive it is found that the jury had not been instructed that it might be considered upon the question of intent.

*People* v. *Dinser*, 121 App. Div. 738; 21 N. Y. Crim. 500, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 8, 1907, which reversed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendant of the crime of murder in the second degree.

The facts, so far as material, are stated in the opinion.

*William Travers Jerome, District Attorney (Robert C.*

*Taylor* of counsel), for appellant. There was sufficient evidence to prove intent. (*People* v. *Schuyler,* 106 N. Y. 298.) On the evidence in this case it was proper to submit the question of malice or intent to the jury. (*Rex* v. *Maloney,* 9 Cox C. C. 6; Roscoe's Crim. Ev. [12th ed.] 19; Wharton on Homicide [3d ed.], 128; *People* v. *Conroy,* 97 N. Y. 62; *Thomas* v. *People,* 67 N. Y. 218; *People* v. *Fish,* 125 N. Y. 136; *People McCann,* 16 N. Y. 58; *People* v. *Rogers,* 18 N. Y. 9; *People* v. *Schryver,* 42 N. Y. 1; *People* v. *Breen,* 181 N. Y. 493.) The court properly charged as to motive and did not err in refusing to charge as requested by defendant's counsel. (*People* v. *Pallister,* 138 N. Y. 601; *People* v. *Tobin,* 176 N. Y. 278; *People* v. *Boggiano,* 179 N. Y. 267.)

*Henry Hardwicke* for respondent. The court erred in refusing to charge the jury that it was proper for them to consider, in connection with the guilt or innocence of the defendant in this case, what motive he may have had, if any, to kill the deceased. (*People* v. *Osmond,* 138 N. Y. 80; *People* v. *Sutherland,* 154 N. Y. 345; *People* v. *Kennedy,* 159 N. Y. 346; *People* v. *Bennett,* 160 N. Y. 402; *People* v. *Jones,* 99 N. Y. 667; *McKee* v. *People,* 36 N. Y. 113; *Hendrickson* v. *People,* 10 N. Y. 13; *Pointer* v. *U. S.,* 151 U. S. 414; *Hester* v. *Comm.,* 85 Penn. 139; *McManus* v. *Comm.,* 91 Penn. St. 57; *McBride* v. *Comm.,* 95 Va. 818.)

WERNER, J. For the purposes of this appeal we need not dwell at length upon the story of the tragedy which had its sequel in the indictment of the defendant for the crime of murder in the first degree, and his conviction of murder in the second degree. Upon defendant's appeal from the judgment of conviction the learned Appellate Division decided that he was entitled to a new trial and we concur in that conclusion, but upon different grounds. The order reversing the judgment of

conviction recites that it is based wholly upon questions of law; that the facts have been examined and no error found therein. The opinion of the learned court clearly indicates, however, that the reversal proceeded upon the theory that the evidence of the prosecution failed to establish one of the essential elements of the crime of murder in the second degree, to wit, the intent to kill. In that reasoning we do not concur. We think, on the contrary, that the evidence was strong enough to justify the submission of the question of intent to the jury as an issue of fact for their determination. That question was very clearly and fairly discussed by the learned trial court, and if it were not for one grave error in an otherwise admirable charge, we should be disposed to disagree with the learned Appellate Division and to uphold the judgment of conviction. The barest outline of a few salient facts will serve as an introduction to the question upon which we think the order of the Appellate Division must be sustained.

The defendant, for some time prior to the commission of the homicide charged against him, had been a widower with three children of tender years who needed a mother's care. He was a plumber whose comparatively scant earnings compelled him to live in the typical New York tenement, where these children were left during working hours to make shift for themselves, and this condition, having been brought to the attention of the agent of the " Gerry " society, led to the suggestion that the defendant must provide himself with a housekeeper. With this in view he sought counsel of a woman of his acquaintance who arranged a meeting between the defendant and one Agnes Renaude, a young unmarried woman who had a child about two years of age. The result of this interview was an agreement, at once consummated, that the defendant and Renaude would live together. The woman's story was to the effect that this arrangement was entered into upon the defendant's definite promise to marry her in the following week; the defendant

testified that marriage had been discussed but never actually agreed upon. Whatever the truth as to that may be they were not married but lived together apparently as husband and wife. This continued for several months, during which their relations, so far as disclosed by the record, were apparently peaceable if not happy. Then the little victim of the homicide, the illegitimate child of Renaude, was brought into the family. The evidence clearly permits the inference that this poor unfortunate aroused in the defendant a spirit of antagonism which was evinced by harshness of treatment and not infrequent acts of physical violence towards her. From that time forth the defendant and Renaude indulged in occasional quarrels in which, according to the testimony of Renaude and her immediate neighbors, the defendant stigmatized the child as a " brat " and " bastard," and thus matters continued until Sunday, September 3rd, 1905. The defendant's movements during the early part of that day are of no present importance. The day had apparently been uneventful until evening when Renaude and the defendant went out to call upon the person at whose house they had first met. After thus passing the larger part of the evening they started for home, arriving there shortly before midnight. According to Renaude's story the defendant asked her to go down stairs and get a pint of beer for him, and when she demurred because she was afraid, he struck her upon the head with one of his shoes which he had taken off. Thereupon he went out and, returning in about half an hour, asked Renaude, " Where is that brat of yours? " Having been told that she was in the bed with his three children, he took her from the bed, brought her into the living-room and threw her upon the floor. The mother attempted to restrain him, but he struck the child with his fist a number of times and continued to strike her until she was torn from him by the mother who then fled into the kitchen. The defendant followed her, striking her with an iron plumber's tool, and again attacked the child, hitting her again at

least three times with his fist. Without going unnecessarily into the harrowing details of the distracted mother's story it may be simply added that she says that at this juncture it was discovered that the child was dead, and that the defendant at once suggested the necessity of getting rid of the body.

The defendant's story is essentially different and, if true, is calculated to acquit him of intentional homicide, although he admits that he administered a blow which threw the child against a desk and caused her accidental death. That is of no moment now for we are at present concerned with only so much of the story told for the prosecution as relates to the error in the charge of the trial court to which we have alluded. As we have already suggested, the evidence which bore upon the circumstances surrounding and preceding the homicide raised an issue of fact upon the question whether the defendant attacked the child of tender years with such an amount and kind of violence as to support the inference of murderous intent, or whether the tragic result was due to a single blow administered in the heat of passion without ulterior design. As bearing upon this question, defendant's counsel asked the trial court to charge "that it is proper for the jury to consider, in connection with the guilt or innocence of the defendant in this case, what motive he may have had, if any, to kill the deceased." In response to this request the court decline to charge upon that subject, except as he had previously charged, and defendant's counsel excepted. Then the court added: "Motive forms no part of the crime of murder. Where you believe, gentlemen of the jury, from the evidence, that the defendant did the act, and did it beyond a reasonable doubt, motive forms no part of the defense." This latter charge, although entirely correct as an abstract proposition, did not cover the request above quoted; and when we refer to the previous portions of the charge upon the subject of motive, we find that the jury had not been instructed that motive may be considered upon the question of

intent. It is true that motive is not an essential ingredient of the crimes of murder in the first and second degrees. Murder in either of these degrees may be committed without a motive, but never without intent. And, as bearing upon the question of intent, motive or absence of motive may present considerations of the utmost importance. Murderous intent may be inferred from motive clearly established, and, conversely, absence of motive, even if not conclusive, may be considered as pertinent to the question of intent where that is in issue. We think the trial cours should have charged as requested upon the subject of motive, and for that reason we affirm the order of the Appellate Division reversing the judgment of conviction and granting a new trial.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT and CHASE, JJ., concur; HAIGHT, J., dissents.

Order affirmed.