# COURT OF APPEALS,

## May 18, 1909.

# THE PEOPLE v. GUISEPPE SANDUCCI.

### (195 N. Y. 361.)

(1). MURDER—APPEAL FROM JUDGMENT OF CONVICTION—CREDIBILITY OF WITNESSES FOR JURY.

In a capital case the Court of Appeals will review the decision by a jury only to the extent of determining whether the evidence fairly and reasonably supports their conclusion upon the questions of fact. The credibility of witnesses is for the jury and not for the court.

(2). SAME—EVIDENCE.

Evidence that a defendant, charged with the crime of murder, followed the deceased and fired four shots at him from behind his back, the third of which caused his death, is sufficient to sustain a finding that the killing was done with a deliberate and premeditated design to effect death.

(3). SAME—EMPLOYMENT OF COUNSEL BY DISTRICT ATTORNEY.

Where the county judge authorized the district attorney, pursuant to the County Law, to employ counsel in a capital case, and the district attorney retained the same person who, as county judge, had authorized such employment, the transaction does not affect any legal right of defendant, but, as a matter which concerns the public, it is disapproved by the court.

(4). SAME—TRIAL—CHARGE—PREMEDITATION AND DELIBERATION.

The counsel for the prosecution requested the court to charge " that in order to constitute murder in the first degree premeditation and deliberation need not both be present." The court, after a colloquy with counsel, did not charge as requested and no ruling was made or exception taken. The court defined and explained deliberation and emphasized the fact that there must be premeditation as well as deliberation. *Held*, that the jury could not have been misled by the request made by the prosecution, but not charged by the court, nor by the colloquy that followed; that if any thing was lacking it was the duty of counsel for the defendant to have presented a request to remove the doubt.

(5). Same.

When the defendant admits the killing, and no question of justification, accident or sanity is involved, the only elements of the crime remaining to be proved are deliberation and premeditation. The court, having charged that the jury were to consider motive upon the question of deliberation and premeditation and as one of the elements in the question whether the defendant was guilty beyond a reasonable doubt, properly denied defendant's request to charge that, if the jury failed to find a motive for the crime charged, or if there was any reasonable doubt as to the existence of a motive, the defendant could not be convicted of murder in the first degree. Motive is not an essential feature of the crime of murder either in the first or second degree, and the crime may be established without proof thereof.

APPEAL from a judgment of the Supreme Court, rendered April 2, 1908, at a Trial Term for the county of Allegany, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Eugene M. Bartlett,* for appellant. The employment and appearance of the county judge of Allegany county upon the trial of the defendant, as counsel for the People, was not only irregular but unprecedented in the history of the jurisprudence of this State and contrary to its public policy. 15 Am. & Eng. Ency. of Law, 933, 934; *Teal v. Walker,* 111 U. S. 242; *Goodyear v. Brown,* 150 Penn. St. 514; *Cancemi v. People,* 18 N. Y. 138; *People v. Bork,* 96 N. Y. 199. It was error to request the court to charge that, in order to constitute murder in the first degree, premeditation and deliberation need not both be present. *Cosselmon v. Dunfee,* 172 N. Y. 507; *Kinne v. I. Ry. Co.,* 100 A. D. 5; *Brooks v. R. Ry. Co.,* 156 N. Y. 252; *People v. Bonier,* 179 N. Y. 324; *People v. Kinksman,* 192 N. Y. 438; *People v. Fielding,* 158 N. Y. 547; *People v. Brooks,* 131 N. Y. 321; *People v. Greenwall,* 158 N. Y. 520. The court erred in its charge with respect to the necessary elements of murder

in the second degree. *People v. Leonardi,* 143 N. Y. 367. The trial court erred in charging upon the question of motive on the part of the defendant in the commission of the crime charged in the indictment. *People v. Corey,* 148 N. Y. 493; *People v. Leonardi,* 143 N. Y. 369; *People v. Dinser,* 192 N. Y. 85.

*Joseph F. Rice, District Attorney,* for respondent.   The employment of the county judge to assist the district attorney was entirely regular and not against public policy or in violation of any statute or the Constitution of the State of New York. (Laws 1892, ch. 686; sec. 204; Code Civ. Pro. secs. 46-51.) The charge of the trial judge was clear and explicit; his definition of murder in both degrees was correct. *People v. Hughson,* 154 N. Y. 164.   The charge of the trial court upon the question of motive was correct. *People v. Trezza,* 125 N. Y. 740; *People v. Johnson,* 139 N. Y. 385; *People v. Boggiano,* 179 N. Y. 267.

VANN, J.:

On the 2d of April, 1908, the defendant was convicted of the crime of murder in the first degree upon an indictment alleging that on the 21st of December, 1907, he inflicted a mortal wound upon the body of one Joseph Dardano with the deliberate and premeditated design to effect his death.

The defendant is an Italian, and at the time of the homicide was twenty-three years of age.   He came to America in 1905 and went to Philadelphia, where he remained until about the 1st of August, 1907, when he moved to this State and located at the village of Belfast, in the county of Allegany.   About the first of October following he began to work for one Michael Decilio, who carried on a bakery in that place, and continued in this employment until the morning of December 21st, 1907, when, as he admitted on the trial, he shot and killed Joseph Dardano.

Dardano and one Albert Mantica were detectives employed by the State excise department to investigate violations of the Excise Law. Both were Italians residing in Albany and pursuant to instructions from the department visited Belfast on the 15th of November, 1907, and went to Decilio's bakery, where they saw the defendant at work baking bread, but had no conversation with him. During the day, in the presence of the defendant, they were served with three bottles of beer by a daughter of Decilio in his place of business. They returned to Albany and reported the facts to the department, when they were again sent to Belfast and on the 20th of December, at their instance, Decilio was arrested for a violation of the Excise Law and arraigned before a magistrate. Evidence was given tending to show that the defendant was present at the arraignment, although he denied it, and several witnesses, including Mantica, testified that they did not see him on that occasion. Dardano and Mantica remained at Belfast over the night of December 20th and the next morning went to the station of the Pennsylvania railroad in that village to take the train for Rochester. On their way they passed by Decilio's bakery, which was between five and six hundred feet from the depot and in plain sight therefrom.

Upon the trial Mantica testified that looking out of the window of the waiting room he saw the defendant and Johnny, a son of Decilio, about fifteen years of age, come over from the bakery and enter the depot. In a short time he noticed that the boy had his eyes on Dardano and himself and was pointing toward them. Thereupon he went over where the lad was standing by the defendant and asked the latter whether he wanted to talk to either Dardano or himself. The defendant made no reply but shrugged his shoulders, walked away and shortly afterward went out of the room. As the train approached, Mantica and Dardano went out on the platform to get on board, when, according to the version of Mantica, he was

shot from behind, and, turning quickly, saw the defendant about fifteen feet away firing toward Dardano and himself. He did not see, but he heard the first shot, which hit him in the back of the head, making a slight flesh wound. The second and third shots hit Dardano, and the fourth penetrated a mail bag in the hands of a messenger who was about to put it on the train. He was standing near Dardano and felt the impact of the bullet as it struck the pouch. The second shot wounded Dardano slightly in the scalp, but the third hit him in the back, and severing the spinal cord caused his death in a few days. The defendant then ran off with the revolver in his hand and warned the people whom he met to get out of his way, pointing it at one who told him to stop. Several eye-witnesses testified that all the shots were fired by the defendant as he was approaching Dardano from behind, and the evidence to this effect was strong and convincing. One witness testified that early in the morning on the day of the homicide he saw the defendant cleaning his revolver in the bakery, but the latter denied it.

On the other hand, the defendant, when sworn as a witness in his own behalf, testified that he saw the detectives on the fifteenth, but paid no attention to them, and did not see them served with beer; that he did not know of Decilio's arrest, and was not present when he was arraigned; that he did not clean his gun on the morning in question, and went to the station simply to get some freight for his employer, as he had many times during the course of his employment. He tried to get it the day before but failed because it had not yet arrived. After seeing the freight he went to the office for it, but the agent said he was too busy to attend to the matter until after the train left. Thereupon the defendant went with Johnny and stood by the stove in the waiting room and in a short time Dardano and Mantica walked up in front of him and both asked what he was doing. He replied, "I go about my business," and they

then said, "Not this morning, you," calling him an insulting name, and walked out. He went to the door and they called him the same name five or six times as he stood there. He said nothing and finally they started toward him, unbuttoned their coats, throwing them back and saying they would throw him out and run him down with the engine. He was afraid of them and shot them, but did not know what he was doing. He was mad and fired four shots. When he fired the first shot they were facing him, and when he fired the second shot they were coming toward him, but they then turned. The shots were fired in quick succession. These men had never harmed him, and up to the time he went to the freight house he did not know who they were. He had had no trouble with them and had no grudge against them, and did not know that they were to be at the station when he went there. He did the shooting in a fit of anger.

The essential features of the defendant's testimony were wholly without corroboration. The boy, Johnny, was a witness, but he did not see the shooting. His testimony as to what occured in the waiting room tended to corroborate the version of Mantica in that regard. The testimony of the defendant that Dardano and Mantica were approaching him in a threatening attitude when he fired the first and second shots was contradicted by that of every other witness who saw the tragedy.

According to the uncontradicted testimony of several witnesses the defendant had carried a revolver for some time before the homicide, and was in the habit of going to the railroad station to get freight to use in his employer's business at the bakery. It also appeared that freight was due and had actually arrived, although the freight agent thought it had been delivered the day before, but he could not say that it had all been delivered. He was of the opinion that some was delivered to Decilio after the homicide. Two witnesses testified that the reputation of the defendant was good. Several eye-witnesses

swore that they did not see either Dardano or Mantica unbutton his coat, throw it back and start toward the defendant, and one of them testified that he observed the body of Dardano after he fell, and that the top button on his coat was buttoned, but the rest were unbuttoned. Mantica denied that either he or Dardano called the defendant names, or unbuttoned their coats and rushed toward him. All the witnesses agreed that the firing was as rapid as possible, but it did not appear whether the revolver was of the self-cocking variety or not.

Even in a capital case, the decision by the jury of all questions of fact is subject to review by us only to the extent of determining whether the evidence fairly and reasonably supports their conclusion upon each of those questions. The credibility of witnesses is necessarily for the twelve jurors who looked into their faces and heard them testify rather than for the seven judges who simply read the printed record of what they said.

In this case there was no question as to the killing of Dardano by the defendant, for he swore to it himself. The controlling question whether the killing was done with the deliberate and premeditated design to effect death, was for the jury to decide. They could have accepted the statement of the defendant, but obviously they did not believe it. They could have found, and the presumption is they did find, that the defendant followed Dardano up with intent to take his life, which involves premeditation; and that after forming the intent he shot at him four times from behind his back, which involves deliberation. The rapidity of the firing is important only as it measures the time the defendant had to change his mind before he fired the third shot which proved fatal. Each shot was a separate act in execution of the design to kill, and as there was time to act twice, there was time to think or to deliberate before the fatal shot was fired. Repeated shots, blows or acts of violence point toward deliberate action. *People v. Ferraro,* 161 N. Y. 365, 374, 15 N. Y. Crim. 60; *People v. Totterman,* 181 N. Y. 385, 388, 19 N. Y. Crim. 412.

We cannot set aside the verdict because it was without evidence to support it, or because it was against the weight of evidence, for it is sustained by proof that is sufficient and satisfactory. We see no reason for disturbing the verdict by using our discretionary power in order to prevent injustice, for according to the record before us we cannot say that the decision of the jury was unjust to the defendant.

The most of the exceptions taken during the trial were not argued, but we have examined them all and find none worthy of consideration except those discussed hereafter. One question was argued, although it was not raised by any ruling or exception, and its importance, not to the defendant but to the public, requires brief notice.

In certain counties of the State, and among them the county of Allegany, the county judge is permitted to practice law. According to the County Law, the district attorney of any county may employ counsel to assist him in the trial of "a capital or other important criminal action," provided he first obtains "the approval in writing of the county judge." The value of the services rendered by counsel thus employed, when certified by the judge presiding at the trial, is made a county charge. (County Law, L. 1892, chap. 686, sec. 204.) Upon due application the district attorney was authorized by the county judge of Allegany county to employ counsel to assist him in the trial of the defendant. When this authority was conferred nothing was said as to what lawyer should be employed, but a few days later the district attorney retained the same person as counsel who, as county judge, had authorized the employment of counsel. Thus the county judge acted officially and personally in the same transaction. He officially authorized a contract to be made, which could not have been made without his approval, and then personally made the contract himself, as one of the parties thereto. As county judge he authorized the retainer and then as a lawyer accepted the retainer himself. While this does not

concern the defendant and he has no legal right, as defendant, to complain of it, it does concern the public, and for this reason we deem it our duty to express our disapproval of the course pursued.

At the close of the charge the counsel for the People requested the court to instruct the jury "That in order to constitute murder in the first degree premeditation and deliberation need not both be present." Thereupon the following colloquy ensued: The Court: "In the first degree?" Judge Reynolds: "It is premeditation *or* deliberation." The Court: "From a deliberate *and* premeditated design." Judge Reynolds: "The other." The Court: "Well, that is the second degree." Judge Reynolds: "That is the second degree." The Court: "From a deliberate and premeditated design. Both are present." Judge Reynolds: "That is the request." The Court: "One edition has the word 'or' for the second degree." Nothing further occurred with reference to the subject. The court did not charge as requested and no ruling was made or exception taken. The counsel for the defendant now urges, although he said nothing upon the subject during the trial, that the request was improper and was calculated to convey a wrong impression to the jury, especially as there was no ruling thereon.

We think the point is not well taken. The body of the charge was unusually full and clear upon the subject of deliberation and premeditation. The jury were repeatedly told that both deliberation and premeditation were essential to constitute the crime of murder in the first degree. After correctly giving the statutory definition of the offense the court proceeded as follows: "In order to appreciate the force of the definition as given by the statute it is well for you to understand precisely what the law says and means by the use of the term 'premeditation and deliberation.' Both terms must exist. The killing must have been from a deliberate and premeditated design. The killing of a human being with deliberation, without premeditation, or

the killing of a human being with premeditation and without deliberation, would not be murder in the first degree."

The court then carefully defined deliberation and explained what it meant and added: "But deliberation is not sufficient. There must be premeditation as well. After having deliberated and formed the design, after having thought about the intent, and had the design and intent created and fixed in his mind, if then the person revolves that intent in his mind, if he meditates upon it, if he thinks about that intent beforehand, before he commits the act, he is guilty of premeditation as well as deliberation." The last thing said upon the subject at the close of the requests to charge emphasized the previous instructions, for the court as its final word to the jury, said: "The statute is if the killing was with deliberation and premeditation."

After such extreme care on the part of the trial justice to lay down the law on the subject of deliberation and premeditation, we think the jury could not have been misled by the improper request made by the counsel for the People, but not charged by the court, and by the colloquy that followed. The jury could not have misunderstood their duty, but if anything was lacking to make the subject entirely clear, and we do not think there was, the counsel for the defendant should have presented a request to remove the doubt.

The remaining exceptions, worthy of notice, relate to the question of motive, and for convenience we will group them together by quoting all that the record shows upon the subject: "Mr. Bartlett: I request your honor to charge the jury that, if they fail to find a motive for this crime charged, or if there is any reasonable doubt in their minds as to the existence of a motive for the crime, that the defendant cannot be convicted of murder in the first degree. The Court: No; I decline. Mr. Bartlett: I except to that. The Court: They will consider all the evidence. Mr. Bartlett: I ask your honor to charge the jury that, in their deliberations as to

the guilt of the defendant of the crime charged in the indictment, the absence of motive is a very material and important circumstance in his favor, if they find none exists. ` The Court: Well, that is a matter of reasoning for the jury. I would say, about the question of motive, that if the jury, in considering the evidence, feel it necessary to have a motive in order to satisfy any reasonable doubt, then your request would be correct. Mr. Bartlett: And I except to the refusal of the court to charge as requested, and to the charge as made. * * * The Court: Every reasonable doubt should be resolved in favor of the defendant. * * * Judge Reynolds: I ask your honor to charge that, where the killing is admitted, the motive is immaterial; that the motive only applies when it is disputed; the killing is disputed or denied. The Court: Well, my opinion is, the question of motive is one of the items for a jury to consider upon reaching the question as to whether the defendant is guilty beyond a reasonable doubt. Of course, it is not within the statutory definition of the crime of murder. Mr. Bartlett: Well, Judge Reynolds' suggestion has suggested another to my mind, and that is, if the jury find there was no motive for the commission of this crime, that the defendant is not guilty, within the definition of the statute, of murder in the first degree. * * * The Court: No; I will not charge that. The statute is if the killing was with deliberation and premeditation; that ends it. The question of motive is for the jury to consider in reaching their conclusion. Mr. Bartlett: I except to the refusal to charge and to the charge as made."

The first request upon the subject presented by the counsel for the defendant was properly refused, because it is well established that the crime of murder in either degree may be committed without proof of any motive. *People v. Dinser,* 192 N. Y. 80, 85, 22 N. Y. Crim. 308; *People v. Scott,* 153 N. Y. 40, 49, 12 N. Y. Crim. 374; *People v. Feigenbaum,* 148 N. Y 636, 639, 12 N. Y. Crim. 273.

The second request might well have been charged literally as presented, but this was not necessary provided it was charged in substance, as we think it was. The jury were told it was their duty to consider motive as one of the elements in the question whether the defendant was guilty beyond a reasonable doubt; that every reasonable doubt must be resolved in his favor and that the question of motive was for them to consider in reaching the conclusion whether the killing was done with deliberation and premeditation.

When the defendant admits the killing and no question of justification, accident or sanity is involved, the only elements of the crime remaining are deliberation and premeditation, both of which must be proved to have existed beyond a reasonable doubt. The last remark of the court upon the subject of motive was that the jury should consider it in reaching a conclusion upon the question of deliberation and premeditation. Furthermore, the earlier direction that the jury should consider motive in deciding whether the defendant was guilty beyond a reasonable doubt, made the subject of motive applicable to every branch of the case.

The last request involved the proposition that motive is within the statutory definition of murder in the first degree. This was obviously improper, as the statute is silent upon the subject, and the authorities are uniform in holding that motive is not an essential feature of the crime of murder either in the first or in the second degree. *People v. Dinser, supra.*

We find no error in the record calling for reversal, and the judgment of conviction must, therefore, be affirmed.

GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.