THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES WALLACH, Appellant.

First Department, July 6, 1926.

Crimes — trial — instructions — manslaughter, first degree — defense that killing which took place in restaurant was done by another — error to charge that jury could not consider motive by defendant for crime — error cannot be disregarded under Code of Criminal Procedure, § 542.

On a prosecution for manslaughter in the first degree based on a killing which took place in a restaurant in New York city, in which the defendant contended that he was not the man who did the killing, it was error for the court to charge the jury that they did not have the right to consider whether or not the defendant had a motive for committing the crime; especially is this true since the evidence was very close on the question of identity. The defendant, under the circumstances, had the right to have the jury consider whether or not he had a motive for committing the crime in determining the question of the identity of the slayer.

This error affected the defendant's substantial rights and cannot be disregarded under section 542 of the Code of Criminal Procedure.

APPEAL by the defendant, Charles Wallach, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, rendered on the 30th day of June, 1925, convicting him of the crime of manslaughter in the first degree.

*George Z. Medalie* of counsel [*Edward I. Kaplan* with him on the brief], for the appellant.

*Felix C. Benvenga, Assistant District Attorney*, of counsel [*Archibald Firestone, Deputy Assistant District Attorney*, with him on the brief; *Joab H. Banton, District Attorney*], for the respondent.

McAVOY, J. The defendant in this case was convicted upon a trial of manslaughter in the first degree. He was indicted for murder in the first degree for shooting and killing one Benjamin Millman on December 19, 1924.

The learned trial court took away from the jury the question of defendant's guilt of murder in the first degree upon the ground that there was no evidence produced which would warrant a finding of deliberation and premeditation, essentials of the crime of murder in the first degree, and submitted to the jury the question as to murder in the second degree and manslaughter in the first and second degrees.

The People produced four witnesses, three of whom, Mrs. Rosenberg, her son Irving, and May Berstein, a waitress, who were in the restaurant when the defendant was alleged to have killed

the deceased, were disinterested witnesses. The fourth, Mrs. Schlissel, said she had a feeling of animosity against the defendant. The People's witnesses knew the defendant well and they all swore to the actual killing of the deceased by the defendant. They differ in minor details as to the color of the gun, some saying it was bright, others that it was blue, and another that it was dark; and they differ as to where the defendant carried the gun, one saying it was in front of his pants next to his shirt, and others saying it was in his hip pocket.

The People's testimony is substantially to the effect that the defendant coolly walked up to Millman, called him a vile name, and shot him in the mouth, causing death a few hours thereafter.

The defendant took the stand himself and denied firing the shot, and is supported in his denial by several witnesses who were in the restaurant at the time. There was thus a question of fact proposed for the jury's decision, and they apparently had some difficulty in deciding it, because they sent to the court a message to the effect that they seemed " hopelessly deadlocked, so evenly divided that a change is not probable."

The defendant's version of the story was that he, the defendant, was seated with Mrs. Schlissel and Mr. and Mrs. Jaffe when an argument started at one of the tables behind them. The defendant and another man named Dressler then left and no shot was heard until they were out of the restaurant. When the one who accompanied him heard the sound of the shot, he turned and saw the defendant right behind him. Everyone came rushing out of the restaurant. When the defendant left, there were about twenty people there.

One witness testified that after the shooting he saw a hatless man run out and jump into a closed motor car which immediately drove off. There was thus the plain question, did Wallach or some one other than Wallach commit the homicide, and the learned court's charge in this respect left that question substantially to the jury; but we must conclude that when the learned trial court charged that absence of motive could not be considered by the jury in determining the guilt or innocence of the defendant, it committed error. The substance of the direction is repeated several times in the court's charge, and the rule was stated as follows:

" But on the fact of the killing, where there are eye-witnesses testifying, the question of the motive is entirely immaterial. * * *

" Then you may consider the question of motive on the question of whether he intended to kill him or not, and if you are not satisfied because there was no proof of motive that he intended to kill him, you could not find him guilty of murder in the second degree.

But you could find him, and it would be your duty to find him, guilty of manslaughter if you did believe he killed him, on the evidence.   *   *   *

" The question of motive does not arise as to whether he killed Millman or not and no honest juror will consider motive on the question of whether he killed Millman or not."

While the learned court did permit the jury to consider the evidence of lack of motive on the question of intent to kill, he forbade it forcibly to consider motive in determining the identity of the slayer or his intent to fire the shot.

This request to charge was made, which was denied: " I also ask your Honor to charge the jury that in considering whether or not they shall believe the testimony of the witnesses for the prosecution or whether to believe the witnesses for the defense or the defendant himself, that they may consider the question whether or not Wallach had a motive for killing the man, as they say he did," which brought the question home forcibly as to whether or not motive could be considered on the question whether they should believe the testimony of the witnesses for the prosecution or those for the defendant, and his own testimony. Where the sole question was as to the identity of the slayer, and where from the message of the jury it appeared there was an equal division of opinion, it was erroneous to tell the jury that they could not consider absence of motive upon the issue of identity. The jury stated " that there is a reasonable doubt as to the validity of the testimony submitted in the absence of proof of motive." This shows that the direct evidence was not sufficiently convincing to warrant a verdict, and it was a consideration for the jury, as it would be for any one else in the decision of whom to believe, whether the accused did or did not have a motive for the act. It is, no doubt, the rule that it is not necessary in order to prove guilt that a motive be established. But the authorities upon the subject of consideration of motive in resolving the facts of intent and identity are all opposed to the ruling of the court. Some of them are here given:

Wharton on Criminal Evidence (Vol. 2, p. 1647) gives the text of the principle: " The absence of apparent motive to commit the offense charged would, upon principles of logic, create a presumption in favor of the innocence of the accused, since, in terms of logic, an action without a motive would be an effect without a cause."

In Wigmore on Evidence (Vol. 1 [2d ed.], p. 356, § 118) these citations covering the subject are found: " Motive always relevant but never essential. (1) Conceding an emotion, then, as a circum-

stance showing the probability of appropriate ensuing action, it is always relevant:

" 1868, WOODRUFF, J., in *Kennedy* v. *People*, 39 N. Y. 245, 254: ' It is always a just argument on behalf of one accused that there is no apparent motive to the perpetration of the crime. Men do not act wholly without motive. On the other hand, proof of motive tends in some degree to render the act so far probable as to weaken presumptions of innocence and corroborate evidences of guilt.'

" 1897, DALE, C. J., in *Son* v. *Terr.*, 5 Okl. 526, 49 Pac. 923: ' Motive to commit crime, if shown, may in many cases be sufficient alone, almost, to induce a belief of guilt. Upon the other hand, where no motive for the commission of a crime can be shown it is almost impossible to convince the mind of guilt. Men do not ordinarily commit grave crimes unless there is in their minds a motive strong enough to overcome the natural repugnance against crime, and the fear of punishment which usually follows detection. This view of this question is so universally recognized as being true that it has become incorporated into the law, and in almost all cases where the guilt of a defendant depends upon facts and circumstances in proof in the case the Court instructs the jury to consider the motive or lack of motive which the proof shows may or may not exist in the mind of a defendant on trial charged with crime.' "

In *People* v. *Seppi* (221 N. Y. 62) the defendant was positively identified by certain witnesses as the man who had shot the deceased. Seppi denied the commission of the crime and attempted to establish an alibi. In reversing the judgment of conviction because of an error in the trial court's charge on the subject of motive, the Court of Appeals (at p. 70) ruled:

" The court in charging the jury further said: ' Motive plays absolutely no part in your deliberations. The prosecution was not required to show you any motive for the crime. In fact the prosecution is never bound to prove a motive for the commission of a crime. Motive furnishes corroboration in a case depending upon circumstantial evidence, but that is not this case. This case is one of direct evidence that this defendant shot or else that the man who did the shooting is not in this court room so far as we know.'

" Proof of motive is never indispensable to conviction for crime. (*Pointer* v. *U. S.*, 151 U. S. 396.) Where testimony is presented on a trial which satisfies a jury that the defendant has committed a crime, it is sufficient for conviction although no motive therefor has been shown. (*People* v. *Feigenbaum*, 148 N. Y. 636.) In

determining the guilt or innocence of a defendant, however, the question of motive is always to be considered by the jury in their deliberations. It was error, therefore, for the court to cha ge the jury that ' Motive plays absolutely no part in your deliberations.' "

It has always been the rule in inquiring into the question of guilt for any act done, that the absence of evidence suggesting a motive for the commission of the crime charged is a circumstance in favor of the accused, to be given such weight as the jury deems proper; and while it is never essential for the State to establish a motive in order to prove guilt, the absence of a motive is a circumstance to be considered with other facts and circumstances in determining the guilt or innocence of a defendant. The defendant here was entitled to have this fact of the absence of any apparent motive for the perpetration of this crime as a willful and deliberate murder weighed by the jury with the other proofs. When the inquiry is as to the author of the crime, it is always a matter of importance to ascertain whether the person who is charged with the dereliction had any motive to commit it. In determining the truth of different versions connected with an alleged crime, motive has an important bearing and should always be considered, according to our own court in *People* v. *Cassata* (6 App. Div. 386).

We think, therefore, there was error in refusing to charge as requested.

This error does not come within the category of those included under the language of section 542 of the Code of Criminal Procedure. If this error did not affect the defendant's substantial rights, we could affirm regardless of the technical error if we could surely say that justice was done under the proof. But here the record shows that the jury, apparently, were divided on the question of the truth of the testimony of the defendant's witnesses. It is, therefore, not without probability that, had the jury been permitted to consider this question of motive in determining the guilt or innocence of the defendant of the fact of the crime, they would at least have disagreed.

We, therefore, order a reversal of the judgment and a new trial.

CLARKE, P. J., DOWLING, MERRELL and WAGNER, JJ., concur.

Judgment reversed and new trial ordered. Settle order on notice.