The People of the State of New York, Respondent, *v.* Joseph Miller, Otherwise Known as " Goat " Miller, Appellant.

Fourth Department, March 25, 1936.

*Judson B. Glen* and *Charles E. Callahan*, for the appellant.

*Daniel J. O'Mara, District Attorney* [*Stephen K. Pollard, Assistant District Attorney*, of counsel], for the respondent.

LEWIS, J.  We review a judgment by which the defendant has been convicted of murder in the second degree.

On the afternoon of November 28, 1928, the body of Inez Smead, a young woman about twenty-six years of age, was found lying near the easterly sidewalk of Thackeray road in the town of Brighton, Monroe county.  Nearby in the roadway were found two empty twenty-two calibre rifle shells.  A subsequent autopsy disclosed two bullet wounds in decedent's body — one at the back of the head where the skull had been splintered but the bullet had not entered the brain cavity; the second wound was one of entry located in the lower left portion of the abdomen and involved the severing of a major abdominal artery.

Upon the trial of the defendant, following his indictment for murder in the second degree, the prosecution produced no witness who had either heard the shots or seen the homicide.  The People's witness Lambert testified that as he drove along Thackeray road on the afternoon in question an automobile, which he described as " a light blue coupe," stopped a short distance ahead of him. He then observed a woman hurriedly leave the coupe by the right door and fall to the ground after running a distance of eight or ten feet.  Lambert thereupon stopped his own car and as he backed to a point opposite the woman's body the coupe started up and vanished from sight without affording him an opportunity to observe its driver.

The People's witness Siebenichen, who had been chopping trees in the vicinity of Thackeray road, testified that while warming himself by a fire a " dark blue convertible coupe," in which were a man and a woman, passed him and stopped near the easterly curb of Thackeray road.  It does not appear that he saw a woman leave the coupe.  He did, however, see a man leave the car and walk around to its rear, from which point the witness heard a noise such as would be made by the dropping of a heavy bundle. The man then re-entered the car and drove away.  The witness apparently paid no particular attention to the incident until twenty minutes later when he observed a number of persons standing near the place where the coupe had stopped and being thus attracted to that point he found them grouped around the body of decedent.

At eight o'clock in the evening of the same day the defendant was found two miles east of the village of Clarence seated in a dark blue Chrysler coupe which was parked near the main highway which leads from Batavia to Buffalo.  On the seat beside him was a twenty-two calibre Stevens rifle and a partially emptied bottle of liquor.  He was taken into custody but the record fails to disclose that he was then charged with having participated in any way in the events of the afternoon on Thackeray road.

On August 23, 1935 — nearly seven years after the death of Inez Smead — the defendant voluntarily appeared at the office of the department of police in Rochester, where he made a statement which is of record before us. From that statement it appears that on November 28, 1928, he was driving a Chrysler coupe in the vicinity of Brighton, returning from a pheasant hunting trip. He had with him a twenty-two calibre rifle which was loaded and had been placed on the back of the seat below the rear window. He states he was then intoxicated and that as he drove along Highland avenue he met a young woman whom he had not known before who, in response to his invitation, entered the coupe and rode with him. There came a time in the course of their drive when, in an effort to shoot a bird, he stopped the car, reached back for the loaded rifle and as he attempted to move out from behind the steering wheel with the rifle in hand, it discharged while his companion was in the car. The woman at once left the automobile and started to run away from the point where it stood. As she did so and when she was forty yards from him, the defendant aimed the rifle at her and fired once. He saw her fall and did not go to her but drove away at once.

Passing from proven facts to applicable law, we note first that the defendant has been indicted and convicted for the crime of murder in the second degree of which the essential element is that the act was " committed with a design to effect the death of the person killed." (Penal Law, § 1046.) Without proof of such a design or intent established beyond a reasonable doubt the conviction cannot stand. (Code Crim. Proc. § 389.)

If it be conceded that the evidence presented by the prosecution was sufficient proof, in addition to defendant's statement, to comply with section 395 of the Code of Criminal Procedure, the question remains as to the sufficiency of the proof of defendant's intent or " design " to effect the death of the decedent.

The inference reasonably to be drawn from the record is that the abdominal wound suffered by the decedent was incurred when the rifle was first discharged while she was seated in the automobile and that the wound in the back of the head resulted from the second shot which defendant aimed at her and fired as she was running away from his car. It also appears without contradiction from the People's witness Dr. Riley that the abdominal wound perforated the intestines and ruptured what he termed the " abdominal aorta," thus causing the abdominal cavity to become filled with blood. An inference might thus be reasonably drawn from the evidence that decedent's death resulted from the first discharge of the rifle which caused the abdominal wound. The reasonableness of such an inference is emphasized by Dr. Riley's

further undisputed testimony that the wound at the back of decedent's head did not enter the brain cavity nor did it injure the tissue or covering of the brain.

This evidence and the inferences to be drawn therefrom become important by reason of defendant's claim that the first discharge of the rifle, which took place while both he and his companion were in the car, was accidental. There is no evidence upon that branch of the proof except the alleged confession by the defendant upon which the prosecution rests its case. The confession — which gives strong support to defendant's claim in that regard — when introduced by the district attorney as proof of defendant's guilt was legally entitled to be considered as a whole. Its damaging parts should not be accepted, and the exculpating portion rejected unless the latter is disputed by other evidence in the case, or is so improbable as to be unworthy of belief. (*People ex rel. Perkins* v. *Moss*, 187 N. Y. 410.) Concededly those portions of defendant's statement which support his claim that the first discharge was accidental are not disputed by other evidence because his statement is the only proof in the case which bears upon that subject; nor can we say that there is anything so inherently improbable in defendant's claim as to prompt its rejection under the rule cited.

We are thus led to conclude that the determination of defendant's guilt of murder in the second degree turned upon the question whether the first discharge of defendant's rifle was accidental or did it indicate " a design to effect the death " of Inez Smead? Upon that question the court instructed the jury: " Now, if that rifle was fired through accidental means, if there was no unlawful intent on the part of Joseph Miller to fire that rifle at Inez Smead, then you can't say, of course, that there was any intent to kill, and your verdict necessarily would be not guilty. But in order to do that you must find beyond a reasonable doubt that it was an accident, just a pure accident."

Such an instruction was erroneous and, in view of the importance of that particular phase of the case, we believe it was prejudicial to defendant's rights. It was equivalent to a ruling that the burden was upon the defendant to prove his innocence of intent or " design " to kill. Of course the statutory rule is to the contrary. (Code Crim. Proc. § 389.) We note that when this error was called to the court's attention a correction was attempted but we do not regard the effort as successful.

We also conclude the following portion of the charge to be an inadequate statement of the law in view of the proof in the case: " Mr. Pollard: I ask the Court to charge that the People are not obliged, as part of their case, to prove motive. The Court: I so

charge. Motive is not an essential element in the commission of the crime."

When a like charge was ruled upon in *People* v. *Dinser* (192 N. Y. 80) it was said (at p. 85): " It is true that motive is not an essential ingredient of the crimes of murder in the first and second degrees. Murder in either of these degrees may be committed without a motive, but never without intent. And, as bearing upon the question of intent, motive or absence of motive may present considerations of the utmost importance. Murderous intent may be inferred from motive clearly established, and, conversely, absence of motive, even if not conclusive, may be considered as pertinent to the question of intent where that is in issue."

More recently the same court has ruled: " While it is true ' that motive is not an essential ingredient of the crimes of murder in the first and second degrees,' and that either crime may be committed without a motive, nevertheless, the question of motive or lack of motive is always a question for the serious consideration of a jury, in determining the guilt or innocence of the defendant. It is the duty of a trial judge to instruct the jury to the effect that in its deliberations upon the question of the defendant's guilt or innocence it may consider the question of the defendant's motive or lack of motive to commit the crime charged. (*People* v. *Sanducci*, 195 N. Y. 361, 370; *People* v. *Seppi*, 221 N. Y. 62, 70; *People* v. *Guadagnino*, 233 N. Y. 344, 348; *People* v. *Wallach*, 217 App. Div. 527.) " (*People* v. *Sangamino*, 258 N. Y. 85, 88.)

These rulings are peculiarly applicable to the instant case where the undisputed proof was that until less than an hour before her death Inez Smead had never met the defendant and there was no evidence of bad temper or any other situation between them which would motivate such a crime.

Our conclusion is that the substantial rights of the defendant were prejudiced by the rulings of the trial court noted herein and that accordingly the judgment of conviction should be reversed and a new trial granted.

All concur, except EDGCOMB and CROSBY, JJ., who dissent in an opinion by CROSBY, J., and vote for affirmance. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

CROSBY, J. (dissenting). While proof of the details of the crime is found only in defendant's confession, there was sufficient corroboration. Even though defendant in his confession stated that the shot that was fatal was accidental, the jury was not bound to believe all parts of the confession.

It is true, as has been said by the Court of Appeals, that " It is only where that part of the declaration which discharges the party

making it is in itself highly improbable or is discredited by other evidence that the court may believe one part of the admission and reject the other." (*People ex rel. Perkins* v. *Moss*, 187 N. Y. 410, 428.) But from the fact that the victim was running away from defendant when the second shot was fired, and after the fatal shot was fired, and from the further fact that defendant fled the scene of the tragedy, coupled with defendant's admission that he fired the second shot purposely, we think the jury could reject, as improbable and untrue, that part of defendant's confession which exculpates him, and find him guilty of intentional homicide.

It is doubtless true that the trial court erred in charging, in substance, that the defendant had the burden of proving that the fatal shot was accidental. In view of the fairness and clarity of the main charge upon the whole, the error was not prejudicial.

EDGCOMB, J., concurs.

Judgment of conviction reversed on the law and a new trial granted.