THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN DLUGASH, Appellant.—Appeal by defendant from a judgment of the Su-

preme Court, Kings County, rendered September 23, 1975, convicting him of murder, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and indictment dismissed. Defendant was charged, in a one-count indictment, with the crime of murder. The indictment alleged that "defendant, acting in concert with another person actually present, on or about December 22, 1973 * * * with intent to cause the death of Michael Lawrence Geller, caused [his] death * * * by means of a deadly weapon, to wit: a loaded firearm". The prosecution's theory of the case was that one Joseph Bush had shot Geller in the chest several times with a .38 calibre revolver and that, "shortly thereafter", defendant had pulled out his own .25 calibre revolver and had shot Geller in the face five times. At the close of the entire case, the trial court dismissed that portion of the indictment which charged that defendant had acted "in concert" with Bush and sent the case to the jury on the theory of common-law murder. The jury found defendant guilty. Under the facts of this case, the People, in order to sustain a conviction, were required to prove beyond a reasonable doubt (1) that Geller was alive at the time the defendant shot him, and died from those shots (see Penal Law, § 125.25) and (2) that the defendant believed Geller to have been alive at that time and that defendant had intended to kill him when he fired the shots. The People's evidence rested upon two confessions made by the defendant to an investigating detective and an Assistant District Attorney, respectively, and the testimony of two medical experts who had performed an autopsy upon the decedent. In his oral confession to the detective, the defendant stated that Bush had shot Geller three times; that Geller then fell to the floor; and that after a few minutes (the detective could not remember the precise number of minutes and testified that it could have been from two to five minutes) he went over to where Geller was lying, took out his revolver and fired five times into Geller's head and face. Defendant told the detective that he thought Geller was already dead when he fired the shots and that he had shot Geller notwithstanding such belief because he was afraid of Bush and feared for his life. In his statement to the Assistant District Attorney, defendant stated that he shot Geller "after Joe [Bush] had his 38 on him"; and that Geller was already dead when he, defendant, shot Geller. The autopsy report states that the cause of the decedent's death was "multiple bullet wounds of head and chest with brain injury and massive bilateral hemothorax with penetration of heart; homicidal." In response to a hypothetical question which posited that Geller had been shot in the chest by a .38 calibre revolver, and was shot three to five minutes later by defendant, both of the doctors who had performed the autopsy admitted that they could not, with any degree of medical certainty, state whether Geller had been alive at the time the latter shots were fired into his head. Under these circumstances, the People failed to prove beyond a reasonable doubt that Geller had been alive at the time he was shot by defendant; defendant's conviction of murder thus cannot stand. Upon the argument of this appeal the People, in effect, conceded such to be a fact. They contended, however, and urge in their brief, that, if the murder conviction is set aside, the judgment should be modified by reducing the conviction to one of attempted murder (see Penal Law, § 110.10). Since the uncontradicted evidence is that the defendant, at the time that he fired the five shots into the body of the decedent, believed him to be dead, and as there is not a scintilla of evidence to contradict his assertion in that regard, section 110.10 of the Penal Law has no application (cf. *People v Miller,* 247 App Div 489). Martuscello, Acting P. J., Christ, Shapiro, Titone and Hawkins, JJ., concur.