## BOYLE vs. THE STATE.

*October 21 — November 6, 1884.*

CRIMINAL LAW AND PRACTICE: EVIDENCE. *(1) Murder of wife: Evidence of previous assaults. (2) Questions assuming facts. (3) Opinions as to cause of death. (4) New trial: Determination as to sufficiency of evidence.*

1. On the trial of a husband for the murder of his wife by acts of personal violence, evidence of previous ill-treatment of, or assaults upon, his wife by the accused, is admissible to show the state of feeling between them.

2. A *post mortem* examination having revealed marks or discolorations upon the neck of the deceased which medical experts testified might have been caused by the pressure of fingers, such an expert was asked, "How do you account for these finger-marks upon the neck, which you discovered upon the first examination, not appearing upon the second examination?" *Held,* that the question was not objectionable as implying or assuming that the marks found were actually made by the hands of any one, the term "finger-marks" being used as descriptive merely.

3. Medical witnesses, qualified as experts, may give their opinions as to the cause of the death of a person.

4. Upon a motion for a new trial on the ground that the evidence did not warrant a verdict of guilty, the defendant is entitled to a judicial determination of that question. A denial of such a motion by the trial judge on the ground that his views upon the question of the defendant's guilt were not so clear or certain that he ought to interfere with the verdict, is *held* to have been equivalent to a determination that the verdict was warranted by the evidence.

ERROR to the Circuit Court for *Columbia* County.

The plaintiff in error was charged with the murder of his wife, and at the first trial was found guilty of murder in the second degree. The judgment was reversed and a new trial ordered. See 57 Wis. 472, where the circumstances attending the death of the wife are stated. The venue was then changed to Columbia county.

The evidence given on the second trial will sufficiently appear from the opinion. The following portion of the charge to the jury was excepted to by the defendant: "I now pass to the definition of manslaughter in the second degree. The killing of a human being without design to effect death, in a heat of passion, but in a cruel and unusual manner, unless it be committed under such circumstances as to constitute excusable or justifiable homicide, is manslaughter in the second degree. If you do not find the defendant guilty of any higher grade of offense, then it is submitted to you upon this statement of the law, and the testimony, to determine whether you shall find him guilty of manslaughter in the second degree."

The following instruction asked by the defendant was refused: "8. In order to convict, the jury must find from the evidence that all the material facts and circumstances point to the guilt of the defendant, and that none of them are consistent with his innocence. In other words if any of the material facts are consistent with the innocence of the defendant he must be acquitted." The court stated that such instruction was "refused because some of the main facts relied upon, such as death and cause of death, might, standing alone, be entirely consistent with the innocence of defendant, or not even afford any presumption of guilt."

The jury found the defendant guilty of manslaughter in the second degree. A motion for a new trial on the grounds that the verdict was not warranted by the evidence, that it

was contrary to the law and the evidence, and that the court erred in its charge to the jury, was denied. In denying the motion the court said:

"If I had not thought the evidence might warrant a conviction of manslaughter in the second degree, under section 4350, I most certainly should not have given the instruction I did upon the subject, citing the statute and commenting upon it. We all know it as a matter within the common observation of all mankind, that some persons when intoxicated fall suddenly, on a slight cause or provocation, and apparently sometimes without any cause or provocation, into a heat of passion.

"I judge from the testimony that intoxication has such effect on the defendant, and if he killed his wife by choking her to death, I think it was in a cruel and unusual manner, and certainly unless we conclude that he did it coldly and deliberately, we must conclude that it was done in the heat of passion. So that I think he was rightly convicted under section 4350, if he killed her.

"Upon the question whether he did kill his wife or not, my views are not so clear and certain that I ought to interfere with the verdict of the jury. I might say another jury and another judge have passed against the defendant on the same question, that of killing. It is proper for me to say this perhaps, although I do not base my judgment on the finding on the former trial in any manner, but on the finding in this case alone.

"Only two other questions are presented that I care to say anything about:

"Did the defendant kill his wife? The jury have found that he did; and as I have said my convictions are not such that I think I ought to interfere with the finding.

"Another question is presented: If he did, did he remember it when he came out of his drunken debauch; and does he remember it now? If a new trial depended upon that

question, I certainly think a new trial ought to be granted. But it is entirely immaterial whether he is able to remember it now or not.

"The motion for a new trial is overruled."

*E. Elwell*, for the plaintiff in error, contended, *inter alia*, that there was nothing in evidence to warrant a verdict of manslaughter in the second degree. There is no evidence whatever of "heat of passion." *State v. Hammond*, 35 Wis. 315; *Pliemling v. State*, 46 id. 516. To constitute that crime adequate provocation and ungovernable passion must concur. Desty's Crim. Law, 128*d*, 128*g*. But the evidence here did not even tend to show any provocation.

For the defendant in error there was a brief by the *Attorney General*, and *J. J. Dick*, of counsel, and the cause was argued orally by *Mr. Dick*.

Cole, C. J. On the second trial of this cause, as on the first (see 57 Wis. 472), the real difficult question to determine was whether the death of defendant's wife was caused by violence applied by some person, or whether it was the result of her debauch. The clear and decided weight of the medical testimony tended to prove that the deceased died from strangulation, choking, or suffocation, which produced asphyxia; but what means were employed to produce asphyxia was left to inference. As observed by Mr. Justice Taylor, in his opinion in 57 Wis., the theory of the prosecution was that the defendant killed his wife by applying pressure or force upon the upper part of the chest, or upon the throat or mouth by his hand, or in some other way, so as to effectually exclude all air from her lungs. The *post mortem* examinations which were made disclosed marks or discolorations on the upper part of the breast bone, and upon the neck, which might have been produced by the hand of a man pressing upon and clasping the throat, and thus choking and smothering her.

On the trial previous acts of ill-treatment of the deceased by the defendant were shown, under objections as being improper testimony. The admission of that testimony is the first error assigned for a reversal of the conviction. On this point the learned counsel for the defendant contends that any evidence of previous ill-treatment by the defendant of his wife, or of any assaults made upon her, was wholly improper, and calculated to prejudice the defendant in the minds of the jury. He says that particular acts of abuse of the wife by the defendant, which had no connection with the offense charged, could not be given in evidence against him for the purpose of raising a presumption of guilt. But the learned circuit court in its charge distinctly directed the jury that any evidence which tended to show ill-treatment of his wife by the defendant would be alone no proof of his guilt of the crime of which he was charged; that the evidence was simply received to show his feelings towards his wife, and as tending to show that his disposition carried him at times to the extent of committing personal violence upon her — acts of a character similar, though different in kind and degree, to those which it was charged caused her death. Now the question is, Was not the evidence admissible for the purpose indicated in this charge, not to prove that the defendant was guilty of the crime charged against him, but to show the state of feeling between the husband and wife, and the want of affection on his part for her? It seems to us it was admissible for such a purpose if for no other.

In *State v. Watkins*, 9 Conn. 47, the public prosecutor, on the trial of an indictment for the murder of defendant's wife, in the absence of direct evidence of the alleged murder, offered, with other presumptive evidence, testimony to prove that for some months before and down to the time of the alleged murder an adulterous intercourse subsisted between the defendant and Mrs. B. It was held that such

testimony was admissible. Chief Justice HOSMER, in the opinion, says: "It is a prominent fact in the case, that the deceased was the wife of the prisoner. The presumption thence arising, that she was not killed by her husband, or that it was not of malice aforethought, was powerful. The relation of husband and wife clearly implies a strong partiality on the part of the husband towards his wife, and the most ardent desire to protect her and to render her happy. As a man will consult his own preservation and pursue his own interest, so, as a general truth, he will equally regard the protection and interest of his wife." Page 52.

It is important to bear in mind the object of the testimony in question and the facts intended to be established by it. And that was to show that the defendant did not entertain a proper regard and affection for his wife; that he had previously, and more than once, committed brutal assaults upon her, when, it is charitable to suppose, he was excited by ungovernable passion; that he had struck and kicked her, even when she was sick, without any apparent provocation. The evidence certainly tended to prove these facts, and it seems to us it was competent, because it showed how the defendant had treated his wife, and how insensible he was at times to her welfare. The jury surely would be warranted in concluding that the same disposition, the same bad feeling towards his wife on his part, continued up to the time of the alleged homicide. All this evidence, together with the other facts and circumstances from which an inference could be made as to the truth and probability of the main charge, were proper matters for the consideration of the jury. On this point we may cite the pertinent remarks of the supreme court of Iowa in a recent case: "It may be conceded, as the defendant claims, that upon a trial for a criminal offense evidence of independent acts of bad conduct is not ordinarily admissible, and in no case to establish the body of the crime. But upon a trial for murder,

where there is evidence that would justify a jury in believing that the crime had been committed by some one, and there are circumstances which point to the defendant as the guilty person, evidence of conduct exhibiting a bad state of feeling on the part of the defendant towards the deceased is admissible." *State v. Cole*, 17 N. W. Rep. 183.

There are other authorities which sustain the admission of such testimony for the purpose of showing the state of feeling on the part of the defendant towards the deceased. *People v. Bemis*, 51 Mich. 422; *State v. Moelchen*, 53 Iowa, 310; *People v. Williams*, 3 Parker, Crim. R. 84; *McCann v. People*, id. 272; *State v. Green*, 35 Conn. 203; *Sayres v. Comm.* 88 Pa. St. 291. It is true, in these cases the question of motive or intent was material, and so it is here, for under the information the defendant might have been convicted of murder in the second degree if the proof had warranted it. " Considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind, would a motive be trifling and insignificant which might prompt to the commission of a great crime." *People v. Hendrickson*, 9 How. Pr. 165; *Benedict v. State*, 14 Wis. 424.

It is said this evidence of bad feeling or ill-treatment was too remote, and for that reason should have been excluded. But the same objection was taken to such testimony in *People v. Bemis*, *McCann v. People*, and *Sayres v. Comm.*, *supra;* but it was held proper to let the testimony go to the jury to be considered with the other evidence.

The case of *Albricht v. State*, 6 Wis. 74, is referred to on this point by defendant's counsel, and requires a word of comment. That was an indictment for manslaughter in the third degree, it being alleged that the killing was in the heat of passion, without a design to effect death. It was held in that case to be error to admit evidence of facts tending to prove other assaults upon the deceased for the purpose of

raising the inference that the defendant was guilty of the offense charged. But had the indictment been for murder in the second degree, as in the present case, then it is intimated in the opinion that evidence of bad treatment of the boy by the defendant would have been proper as bearing upon the question of malice or intent. But we do not think the decision is applicable here upon the question we have been considering. It need not, therefore, be further noticed.

Dr. Davis, one of the physicians who aided in making both examinations of the body, among other questions was asked this one by the prosecution: "How do you account for these finger-marks upon the neck, which you discovered upon the first examination, not appearing on the second examination?" The question was objected to as assuming that the marks upon the neck were in fact finger-marks. It is said the jury, from the form of the question, might well infer, and had the right to infer, that the court regarded the proof as sufficient to show that these marks were actual finger-marks. We do not think there was any danger that the jury would draw any such inference from this course of examination. The marks were spoken of in this question and in other places as finger-marks, as a ready way of directing the attention of witnesses to them. It was a convenient mode of describing them, but it did not imply or really assume that such marks were actually made by the hand of any one.

The counsel for the defendant in divers ways objected to the medical witnesses giving their opinion as to the cause of the death of the deceased. These witnesses were fully competent to testify as experts under sec. 1436, R. S. They had attended one or both of the *post mortem* examinations, and they based their opinion upon the condition and position of the dead body as they found it; upon the pathological condition of the internal organs, their congestive

appearance, the convulsed state of the muscular system, etc. They testified as to facts within their personal knowledge; also, probably, to matters derived from professional study and experience. We suppose they could give their opinion as to the cause of the death of the deceased. Says Prof. Greenleaf: "The opinions of medical men are constantly admitted as to the cause of disease or of death, or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other subjects of professional skill." 1 Greenl. on Ev. § 440. When this case was here before we did not intend to lay down any new rule as to expert testimony, and certainly did not, as an examination of the opinion of Mr. Justice TAYLOR will show.

On the second trial the defendant could not be convicted of any crime higher than murder in the second degree, but might be convicted of a crime of less grade, as he was. Consequently, any evidence which would tend to convict him of murder in the second degree, or of manslaughter in some degree, was competent and proper under the information. We cannot notice all the objections which were taken to the admission or exclusion of evidence. We have only discussed those which we deem most important; as to the rest, we content ourselves with saying that we do not consider that there was any error, either in the admission or exclusion of testimony, which could have prejudiced the defendant.

The charge of the court is clear and quite full upon the law of homicide applicable to the case. No exceptions were taken to the charge, except to two or three portions of it, and these portions are rather objected to as not being founded upon the evidence, rather than as being incorrect statements of the law. But we shall not dwell upon the charge, which we think was correct. All the defendant's instructions were given except one, which was plainly erroneous, for the reason stated by the circuit judge.

The defendant was convicted of manslaughter in the second degree, which our statute defines to be the killing of a human being, without a design to effect death, in a heat of passion, but in a cruel and unusual manner. Sec. 4350, R. S. The defendant moved for a new trial, on the ground that the verdict was not warranted by the evidence, but was contrary to both the law and the evidence. We cannot discuss the question whether the verdict was contrary to the evidence further than to say that if the jury were satisfied that the defendant killed his wife they might find him guilty of manslaughter in the second degree. But the learned judge, in overruling the motion for a new trial, made some remarks which the defendant's counsel says show clearly two things: (1) that he was not convinced that the verdict was right; (2) that he based his ruling on the motion, not upon the evidence, but upon the verdict alone. The counsel says the defendant was entitled to the judicial determination of the court as to the justice of the verdict, in view of all the evidence. Undoubtedly, he was. And we think the record shows that the deliberate judgment of the circuit judge was exercised when he denied the motion. It is true, the circuit judge observes that, upon the question whether the defendant did kill his wife or not, his views were not so clear and certain that he ought to interfere with the verdict. We understand from this remark that while the circuit judge was not entirely clear upon that point, yet he was not dissatisfied with the verdict, nor did he consider it unwarranted by the evidence given on the trial. The vital question in the case was whether the deceased's death was caused by violence. The evidence which tended to show that it was, was mainly that of the medical witnesses and was circumstantial. It appears that the evidence convinced the jury of the guilt of the defendant. Under the charge, the jury must have been satisfied of this fact beyond all reasonable doubt. The circuit judge

was not able to say that the probative force of the evidence was insufficient to lead the jury to that conclusion. He therefore declined to disturb the verdict on the ground that it was not warranted by the evidence. This is the meaning of his remarks as we understand them.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.