ALFRED SON v. THE TERRITORY OF OKLAHOMA.

1. MOTIVE—*Inadmissible Evidence.* Where the prosecution rely for a conviction upon circumstantial evidence alone, and it is sought by the testimony of witnesses as to the conduct and acts of the deceased to show a motive upon the part of the accused for the killing, and it does not appear that such acts and conduct of the deceased were brought to the knowledge of the accused, *held*, prejudicial error.

2. SAME—*Essential Elements of Proof.* In order to establish a motive for the commission of a crime, it is essential that the facts upon which the motive is assigned shall be within the knowldge of the party accused.

*Error from the District Court of Canadian County.*

STATEMENT OF FACTS.

On the twenty-fifth day of April, 1895, the grand jury of D county returned an indictment against Bailey Son, Alfred Son, Dick Yeager, *alias* Zipp Wyatt, Dan McKinzie, and Grant Pettyjohn, charging said parties with the murder of one Fred Hoffman. The

case was taken upon a change of venue to Canadian county, and the defendant, Alfred Son, tried upon the indictment.    Upon the first trial the jury disagreed. The second trial resulted in a conviction of the defendant, Alfred Son, the jury fixing the punishment at imprisonment for life,   A motion for a new trial was overruled, and the sentence of the court pronounced in accordance with the verdict.   To reverse the judgment of the lower court the case is brought here and numerous errors are assigned for the consideration of this court only one of which we deem it necessary to consider.   Upon the trial of the cause in the lower court certain testimony offered by the prosecution went to the jury, over the objection of counsel for the appellant, and it is claimed that in admitting such testmony, the court committed prejudicial error.

In order to arrive at a proper understanding of what was involved in the testimony objected to, it is necessary to review at some length the facts as we gather them from a reading of the evidence.

It appears that Fred Hoffman, the person whom the appellant is charged to have murdered, was killed by some person or persons on January 22, 1895.   At the time of such killing Hoffman was traveling from his home, some distance southwest of Taloga, to that place, and his body was discovered at a point about three and a half miles southwest of Taloga on January 26, and when so discovered was in a place, by the witnesses termed a "blow hole" in the sand hills near the South Canadian river, and about seventy-five to one hundred feet from the road which Hoffman was traveling upon just previous to the time, as it appears from all the testimony and circumstances in the case, he was murdered.

Hoffman was shot twice, as the evidence showed, one bullet hole near the heart and one wound by a bullet entering the mouth and coming out through the top of the head. Within about twenty-five feet from where the body of Hoffman was found lay the dead body of his horse. The animal had been killed by a shot from a rifle or revolver, the bullet having passed through its neck. The first shot received by Hoffman was the one near the heat, as the one in the mouth appeared from the direction in which the bullet ranged to have been fired after Hoffman had fallen to the ground, and at such a close range as to powder-burn his face.

In and about the vicinity of Taloga, for a few days prior, and upon the morning of the day when it must be presumed from the evidence Hoffman was killed, there appeared a person styled by some of the witnesses as "Buck," others as "Red Buck," while others spoke of him as "Yeager," and one witness gave his real name as "Bert Collins." As developed by the evidence upon the trial the person so styled and named was a notorious outlaw, given, according to public rumor, to train and express robbery, and upon whose head the express companies operating in this territory had set a price. This man was seen to be frequently in the company of Bailey Son and Alfred Son and Grant Pettyjohn, and was upon apparent terms of intimacy with such parties.

On the morning Hoffman was killed, Alfred Son, the appellant, left the town of Taloga, driving two horses hitched to a single seated buggy. In the buggy and riding with him was Collins, the outlaw, who was leading a gray horse. Both Son and Collins were armed, the former with a revolver, and the latter with a revolver, and a Winchester rifle. Son and Colling left town driving in a southwesternly direction along the same road

which Hoffman was traveling in coming into the town. It developed in the testimony offered by the prosecution that Alfred Son was paying attention as suitor to a young lady, who had sent him a note asking him to come out to where she was staying, and take her to town, and that the trip out, upon the part of Son, was to comply with this request. Just before Son left Taloga he procured a box of cartridges for his revolver, and was in and about a saloon with Collins drinking, and in fact became considerably intoxicated and shot off his revolver in the air, and so conducted himself that the stable man where Son procured the buggy with which to make the trip was about to take the same away from him, when Collins interposed and induced him to permit Son to use the rig, upon Collins' statement that he would see that the team was properly cared for. Under the evidence it appears that Hoffman must have been killed about the time Son and the outlaw, Collins, would, by traveling at an ordinary gait, meet him. One of the witnesses testified that she saw Hoffman cross the ford on the river, and about fifteen minutes thereafter saw a buggy coming from an opposite direction. Hoffman was killed at a point about one-half mile from the ford. The buggy she saw was the one Son was riding in. At the time she saw the buggy the outlaw was not with Son and the gray horse had also disappeared. About the time Son and the outlaw were in the vicinity of the place where Hoffman was killed, shots were heard which, from their sound, and the appearance of the smoke, were close to that point.

When the body of Hoffman was discovered, on the 26th day of January, four days after he was presumed to have been killed, parties searching for a clue to the murderers found the track of a buggy which had left the

34—v.

road near the point where the body was found, driven up to the rim of the blow hole, a distance of from twenty-five to fifty feet from the road, stopped, and from the place where the buggy stopped two persons had walked in the direction of the body and near thereto, and then returned to the buggy. Two horses had been driven to the buggy, as was evinced by their tracks. About one hundred feet south of where the buggy stood were found the tracks of two more persons leading to and out from the blow hole where the body of Hoffman was found. About two hours after the shooting was heard in the vicinity of the place where the body of Hoffman was afterwards found, a party was seen upon a gray horse riding away from such point.

In the fall of the year 1894, one express robbery had occurred at Woodward, Oklahoma, and another at Canadian City, Texas, and the Wells, Fargo Express company were trying to locate and arrest the persons engaged in such robberies. Hoffman was county treasurer of D county, and United States commissioner, and was also secretly trying to aid the express company in ferreting out the parties who committed the robberies referred to. The prosecution relied solely upon circumstial evidence to convict. The defense offered no testimony. Upon the trial of the case one T. M. Cook, over the objection of counsel for the defendant, was permitted to testify to the fact that Hoffman was employed as a detective to ferret out the parties who had committed the express robberies which had occurred at Woodward, and that his efforts were directed towards fastening the guilt for such crime upon the near relatives of the defendant, Son. One Hicks was also placed upon the stand by the prosecution, who testified that, just prior to his death, Hoffman stated to him that he was engaged in looking up

testimony concerning the express robbery at Canadian City, Texas. While it appears from the record that counsel for defendant interposed objections to the testimony of the witness, Hicks, yet it is doubtful if the objections as interposed should be by themselves considered as sufficient to authorize this court in holding them good. Thomas Smith also testified, over the objection of counsel for defendant, that Hoffman, just prior to his death, was charging defendant and his relatives with the express robbery at Woodward, and that Hoffman showed him letters that he wrote, and also received, relative to that matter. The witness Cook testified that it was not generally known that Hoffman was engaged in such work. Other questions were asked and answers given relative to the same matter, to which objections were not properly taken and the court, upon his own motion, withdrew from the consideration of the jury all the evidence touching the letters. When counsel for the territory first began interrogating the witness for the purpose of showing that Hoffman was, just prior to his death, at work trying to implicate the defendant and his associates in the express robberies, and upon objection being made to such testimony, the court very frankly stated that he thought that the testimony showing that Hoffman was employed by the express company to apprehend the parties who had committed the robbery, competent, if such efforts were directed towards the defendant then upon trial, or any person jointly indicted with him. But after the witness had answered that Hoffman was so engaged, and upon motion of counsel for defendant to strike out, for the reason that the statements of Hoffman as to his employment were declarations made in the absence of the defendant, the court said that "unless the knowledge that he, Hoffman, was

working for that purpose was brought home to the defendant or some person working with him, it was not competent," and the court then asked the witness this question: "Do you know anything about these defendants, or of this man who has been described as Wyatt, Red Buck, etc.; do you know anything of their having knowledge of the business in which Mr. Hoffman was engaged, that particular business?" To which the witness answered, "I do not." After this question and answer the witness was permitted, over the objection of counsel for defendant, to testify that Hoffman was engaged in working up the evidence concerning the express robbery against the near relatives of the defendants.

For some reason, and we judge, from the statement of the court, it was inadvertance, the testimony of this and other witnesses touching this matter was not withdrawn from the consideration of the jury, although no attempt was made to show that the defendant on trial, or, in fact, the-parties jointly indicted with him, ever knew or had any cause to believe that Hoffman was engaged in an attempt to connect them with an express robbery.

*Houston & Marum, Asp, Shartel & Cottingham*, and *R. J. Ray*, for plaintiff in error.

*H. G. Springslun, County Attorney; Edward Black* and *J. C. McKnight*, of counsel, for defendant in error.

The opinion of the court was delivered by

DALE, C. J.: Where circumstantial evidence alone is relied upon for a conviction, proof of a motive upon the part of the accused which would induce him to commit the crime is always competent, and, if a strong motive be shown,

unquestionably it would require a less amount of other evidence to bring about a conviction. In other words, motive to commit crime, if shown, may in many cases be sufficient alone, almost, to induce a belief of guilt. Upon the other hand, where no motive for the commission of a crime can be shown, it is almost impossible to convince the mind of guilt. Men do not ordinarily commit grave crimes unless there is, in their minds, a motive strong enough to overcome the natural repugnance against crime and the fear of punishment which usually follows detection. This view of this question is so universally recognized as being true, that it has become incorporated into the law, and in almost all cases where the guilt of a defendant depends upon the facts and circumstances in proof in the case, the court instructs the jury to consider the motive or lack of motive which the proof shows may or may not exist in the mind of a defendant on trial charged with crime. Such being the law, it was right and proper for the court, in the trial of this case, to permit the territory to establish, upon the part of this defendant and those associated with him, a motive for the killing of Hoffman, and if it could have been shown that Hoffman was engaged in the attempt to fasten the responsibility for express robbery upon them, it was proper to permit the proof, if, as the court well said, the knowledge of what Hoffman was doing was brought home to the parties charged with the killing. But we think when the prosecution closed its case without supplying such proof, either by the direct testimony of witnesses or by proof of facts or circumstances from which the jury might reasonably infer that the defendant had such a knowledge, prejudicial error was committed against the defendant. The only proper office which the proof of Hoffman's efforts

against the defendant and his associates could fill, was for the purpose of showing a motive upon their part, strong enough to tempt them to the murder of Hoffman. This was the view which the trial court took, as indicated by the statement that "unless the' knowledge that he, Hoffman, was working for. that purpose was brought home to the defendant or some persons working with him, it was not competent." The evidence in this case does not meet this requirement because it does not appear that the defendant or those with whom he associated knew what Hoffman was engaged in; neither does it appear that any attempt was made to bring such knowledge home to such parties. A motive cannot operate to influence, until the facts which create the motive exist. The facts upon which a motive is based cannot operate upon-the mind until they are known by the party against whom the motive is assigned. If one person should contemplate and undertake a great wrong against another, such a wrong as would induce in the mind of the person against whom it was directed a motive to kill, and yet such contemplated wrong was unknown to the party, it cannot be justly said that a motive to kill could exist, because the party wronged had no knowledge of the facts which would be necessary to create the motive. Applying this reasoning to the case under consideration, it does not appear that the defendant, or any of the persons jointly indicted with him, knew that Hoffman was trying to implicate him or any of their friends in the express robberies; upon the other hand, it does appear by the testimony of at least one witness that such fact was not generally known. In the absence of proof of knowledge upon the part of the defendant, the evidence was improper to show a motive to kill. It could not have been offered or received for any other purpose. We

cannot tell how much weight the jury may have attached
to such testimony; they may have given it great consid-
eration, and upon the other hand they may have thought
the testimony sufficient without the showing of the
motive.   About this we have no information.   We do
know that the evidence was before the jury and that
it may have prejudiced the defendant.   The supreme
court of Kansas in *State v. Reed*, 53 Kan. 767; 37 Pac.
174, in a case where a motive for murder was sought to
be shown by the proof of facts not brought to the knowl-
edge of the defendant, the court by Johnston, J., said:

"A more serious objection is made to interviews and
conversations held with the deceased some time prior to
the shooting when the defendant was not present and
of which he had no knowledge.   A witness was permitted
to detail at length a meeting between himself and Hacker
on the day before the shooting, the taking of a night
drive with the deceased during which he related to the
witness his troubles at Wellington, and his plans for
leaving that place and going to Missouri.   He was
allowed to testify what the mood and manner of the
deceased were on that day, and to relate the reasons
given by the deceased for leaving Wellington.   The
reasons stated was the interference in his family and the
trouble made by the defendant.   Another witness, over
objection, related that he had met the deceased on the
next day and had a conversation with him, in the absence
of the defendant, in which the deceased informed him,
among other things, that he had determined to go to
Missouri, and the reason given was 'that if he could get
his wife away from where Judge Reed was they could get
along all right together.'   Acts and conduct of the
deceased previous to the fatal encounter which formed a
part of the *res gestæ* or which tended to throw light upon
the question of motive or malice might be admitted in
evidence, but the acts or conduct of deceased which are
not a part of the *res gestæ* and which could not have

influenced the defendant in the commission of the homi-
cide cannot be shown.    The manner and conduct of
deceased on the day previous to the killing were not
known to the defendant and are not connected with the
homicide, and therefore the defendant could not be
affected thereby.    Anything that would throw light on
the homicide and anything that would operate upon the
mind of the defendant can be shown; but evidence of the
acts or manner of the deceased which never came to the
knowledge of the defendant could not be proved."

We think this view of the law eminently correct.    In
support thereof we cite the following cases, which bear
upon this proposition: *People v. Corkhuff*, 24 Cal. 640;
*Commonwealth v. Gray*, [Ky.], 30 S. W. Rep. 1015;
*People v. Tress*, [Cal.], 40 Pac. 752; *Montag v. People*
[Ill.], 30 S. E. Rep. 237; *State v. Punshon*, [Mo.], 27 S.
W. Rep. 1111; *Cheek v. State*, 35 Ind. 492; *Combs
v. State*, 75 Ind. 215; *Graves v. The People*, [Cal.], 32
Pac. 63.

It is unnecessary to consider the other errors assigned.
For the reasons stated, the judgment of the lower court
is vacated and the cause remanded for a new trial.

Tarsney, J., having presided at the trial of the cause
in the court below, not sitting; all the other Justices
concurring.