# CHARLESTON.

## STATE v. EARL H. BRANNON

## (No. 5786)

### Submitted March 15, 1927.  Decided March 22, 1927.

1. HOMICIDE—INDICTMENT AND INFORMATION—*Evidence of Motive, to be Admissible in Criminal Case, Must Have Natural Tendency to Support Motive Assigned; in Murder Case, State's Evidence That Defendant Killed Deceased to Aid Suit With Deceased's Wife Held Inadmissible.*

   A wide latitude is permissible in the admission of evidence in a criminal case to show motive. But the evidence must have a natural tendency, in view of the circumstances surrounding the crime, to support the motive assigned. If a certain event does not fairly tend to establish that motive, it is not admissible. (p. 428).

   (Criminal Law, 16 C. J. § 1048; Homicide, 30 C. J. § 406; Indictment and Information, 31 C. J. § 448.)

2. CRIMINAL LAW—*Examiner Can Not Object Because Answer Responsive to Question is Prejudicial to Himself; Where Judgment Asked Deceased's Wife Reason for Delay in Informing Husband of Improper Conduct of Defendant Toward Her, Answer Responsive to Question Was Not Inadmissible Because Prejudicial to Defendant.*

   When an answer is responsive to the question, the examiner can not object to its admission because it is prejudicial to himself. (p. 429).

   (Criminal Law, 17 C. J. § 3557; Witnesses, 40 Cyc. p. 2520.)

3. COURTS—*Before Giving Instruction Based on Former Decision of Appellate Court, Trial Court Should Ascertain Whether it Has Stood Test of Later Criticism.*

   Before giving an instruction based on a former decision of this court, a trial court should first ascertain whether the instruction has stood the test of later judicial criticism. (p. 430).

   (Courts, 15 C. J. § 308.)

4. HOMICIDE—*Instruction That Homicide is Presumed Second Degree Murder, Putting Burden on State to Elevate it to First Degree, and on Defendant to Reduce it to Manslaughter, Should Not be Given Without Proper Modification.*

   Pt. 10, Syl., *State v. Cain*, 20 W. Va. 679, should not be

given as an instruction unless properly modified. See Pt. 3, Syl., *State* v. *Graham*, 94 W. Va. 67. (p. 430).

(Homicide, .30 C. J. § 644.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Harrison County.

Earl H. Brannon was convicted of second degree murder, and he brings error.

*Reversed; new trial awarded.*

*Robinson & Robinson* and *A. F. McCue,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *M. M. Neely,* for the State.

HATCHER, PRESIDENT:

The defendant is under conviction of second degree murder, upon an indictment charging him with killing B. H. Martin.

Both of these parties resided in the town of Bridgeport in Harrison county. Prior to July, 1924, they had been friends; the defendant being the family physician of Martin. During that month their friendship terminated. Jesse Martin, the wife of the deceased, gave as the reason for the estrangement certain improper familiarities attempted with her by the defendant, culminating in a salacious advance made in July, 1924, of which she informed her husband. The defendant controverted that reason, and attributed the breach of friendship to his repetition of a scurrilous tale current about Mrs. Martin, which Martin charged him with originating. He testified that Martin became greatly infuriated at that time, drew a pistol on him, demanded that he "straighten up" the report, and that after July, 1924, Martin threatened and vilified him on several occasions.

The defendant admitted killing Martin. He stated that Martin came to his office on May 26, 1925, demanded that he leave Bridgeport, and that, upon his refusal, Martin said he would kill him; that defendant retreated from the front to the rear room of the office, where Martin pursued him; that Martin ran his hand into his trouser's pocket, and defendant

thereupon believing Martin intended to carry out his threat, shot him. There was no eye-witness of the encounter.

No weapon of any kind was found on Martin. For that reason the prosecution refused to believe that he intended to kill or stated that he would kill the defendant on that occasion. Because of other circumstances and certain conduct of the defendant, which the prosecution considered inconsistent with an act of self-defense, it refused to accept the defendant's account of the tragedy. The theory upon which the State proceeded is that the real motive for the killing was not imminent danger to the defendant, but his infatuation for Mrs. Martin. In support of that hypothesis, Mrs. Martin was permitted by the trial court to testify of several advances made to her by the defendant prior to the breach of their relations in July, 1924. Her evidence shows that she gave him no encouragement; that she repelled his advances; and that after July, 1924, she disliked him intensely. The defendant denied making the advances, and testified that he never had any affection or infatuation for Mrs. Martin. After July, 1924, the evidence discloses no attempt by the defendant to further pursue Mrs. Martin, or to overcome her dislike for him. It is silent as to anything said or done from which it can be inferred that he desired to renew the friendship, or that the alleged infatuation still existed.

When this lack of evidence, so material to the State's theory, is considered in connection with the evidence that defendant had never resented Martin's affronts, that he had consistently avoided trouble with Martin, and that he did not seek the final encounter, we must hold that it is beyond human experience to believe that the defendant killed the husband in order to prosper a suit which had never met with favor from the wife. The State is permitted wide latitude in establishing motive in cases of homicide. 16 C. J. 547, par. 1048; Wharton's Crim. Ev. (10th Ed.) Sec. 895. But the evidence must have a natural tendency, in view of the surrounding circumstances, to prove the motive assigned. "Inquiry into intent cannot be extended to facts or circumstances which do not necessarily bear on the issue to be established: just as evidence of all collateral facts and circumstances must be confined to

the proof of those which have a legitimate and direct connection with the principal transaction." *Commonwealth* v. *Jeffries,* (Mass.) 83 Am. Dec. 712. *Durrett* v. *The State,* 62 Ala. 434 (440); Wharton, *supra,* Sec. 24; Jones, Com. on Ev. (2nd Ed.) Sec. 587. Here the evidence points only to the ashes of an unrequited passion—not to a desire which still flamed.

The evidence indicates that something was preying on Martin's mind the day he was killed—something which finally drove him to seek a private interview with the defendant. Mrs. Martin testified that she had never informed her husband of defendant's most flagrant misconduct toward her, which she stated had occurred in May, 1924, until the night before the killing. That information would account for Martin's state of mind the next day. For that purpose the defendant would have the right to show what Mrs. Martin claims to have told the deceased. But the state cannot introduce that evidence unless it can also establish that Martin's demand that defendant leave Bridgeport was based on that information, *and the defendant so understood it. State* v. *Reed,* 53 Kan. 767; *Stokes v. People,* 53 N. Y. 164; *Son* v. *Territory of Okla.,* 5 Okla. 526 (534); Wharton, Homicide Sec. 596.

Counsel for defendant required of Mrs. Martin her reasons for waiting a year before informing her husband of the May, 1924, episode. She commenced a somewhat involved explanation of the delay, to which counsel objected, but the court allowed her to finish her answer. Her answer was prejudicial to the defendant. It gave, however, what she said were her reasons for the delay. It was responsive to the question and therefore admissible. "A party who, on cross examination of his adversary's witness, elicits testimony which is incompetent or prejudicial to himself, cannot object to its admission." 40 Cyc. 2520 (k). Underhill's Cr. Ev. (3rd Ed.) Sec. 356; *Kelly* v. *State,* 1 Tex. App. 628; *Loy* v. *State* (Wyo.) 185 Pac. 796; *Com.* v. *Bober,* 59 Pa. Sup. 573; *State* v. *Weisenberger,* 42 Wash. 426; *State* v. *Trusty,* 122 Iowa 82.

Counsel for the State was permitted to ask the defendant

on cross examination if the deceased was not considered a peaceful man. Defendant says that was error. The defendant had testified on his examination in chief to several threats and vilifications by the deceased. Under *State* v. *Arrington,* 88 W. Va. 152 (157), that testimony was a direct attack upon the reputation of the deceased for quiet and peaceable conduct, and the question above referred to was therefore legitimate cross-examination.

State's Instruction No. 1 is based upon an instruction which was approved in *State* v. *Kellison,* 56 W. Va. 690 (Inst. No. 7, p. 698). A similar instruction, however, was condemned in *State* v. *Garner,* 97 W. Va. 222, and in other decisions of this court cited therein.

State's Instruction No. 2 was couched in language which was held to be bad in *State* v. *Hurst,* 93 W. Va. 222 and in *State* v. *Laura,* 93 W. Va. 250.

State's Instruction No. 4 was based on Instruction No. 4, approved in *State* v. *Bickle,* 53 W. Va. 597. In *State* v. *Ringer,* 84 W. Va. 546, and other decisions of this court cited therein, the giving of an instruction similar to No. 4 in the *Bickle* case was disapproved.

State's Instruction No. 10 is copied from Pt. 10, Syl., of *State* v. *Cain,* 20 W. Va. 679. The giving of that point as an instruction has been condemned in *State* v. *Graham,* 94 W. Va. 67, and other decisions therein cited.

State's Instruction No. 12 is as follows: "The court instructs the jury that the mere fact, if it be a fact, that the deceased made threats against the defendant, would not of itself be sufficient to justify the defendant in taking B. Harrison Martin's life." The giving of instructions similar to this has been frequently condemned by this court. It singles out and gives undue prominence to the threats against defendant, and is therefore calculated to mislead the jury. See *State* v. *Grove,* 61 W. Va. 697, and cases cited in the opinion, page 705.

We have examined the other instructions given and refused, and find no error in the ruling of the court thereon.

For the reasons indicated the judgment of the lower court is reversed, and the defendant awarded a new trial.

*Reversed; new trial awarded.*